# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BILLIE JO CLAYBURN-DAY,                          Case No. 1:10-cv-859

       Plaintiff,                                    Spiegel, J.
                                                 Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Billie Jo Clayburn-Day filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C.  §405(g).  Proceeding through counsel, Plaintiff presents seven claims of error, all of which the Defendant disputes  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I.  Summary of Administrative Record

On April 18, 2007, Plaintiff filed an application for Supplemental Security Income (SSI), alleging a disability onset date of January 27, 2007, due to depression, hearing problems, high blood pressure, asthma and sleep apnea . (Tr. 65-68, 133-44).  Plaintiff was born in 1974 and was 32 years old on the alleged disability onset date.  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge.  ("ALJ").  On October 17, 2009, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Paul E. Yerian.

(Tr. 25-64). A vocational expert (VE), Janet Rogers, also appeared and testified at the hearing.

On December 16, 2009, the ALJ denied Plaintiff's SSI application in a written decision. (Tr. 8-20). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the special earnings requirement of the Act on January 27, 2007, the date she alleges she became unable to work, and continued to meet those requirements through September 30, 2009, but not thereafter.

   ……………………..

2. The claimant has not engaged in substantial gainful activity since January 27, 2007, the alleged disability onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

   ……………………..

3. The claimant has the following severe impairments: major depression, degenerative disc disease in the lumbar spine with S1 radiculopathy, obesity, bilateral carpal tunnel syndrome, obstructive sleep apnea, dependent personality disorder, asthma, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   ……………………..

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to work that does not involve climbing ladders, and requires only occasional bending, stooping and reaching, with no more than moderate exposure to hazards and no concentrated exposure to atmospheric pollutants. Furthermore, the

claimant is capable of frequent use of hands for fingering, feeling and handling. Due to the claimant [sic] mental impairments, she is capable of no more than simple, routine tasks in a static environment without high quotas, heavy production demands, or more than superficial contact with others.

……………………..

6.      The claimant cannot perform her past relevant work (20 CFR 404.1565 and 416.965).

……………………..

7.      The claimant was born on February 27, 1974 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

……………………..

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

……………………..

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-19). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and therefore not entitled to SSI.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## B.  Specific Errors

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) failing to give controlling weight to the findings of her treating physician; 2) relying on the findings of the consultative examining physician; 3) failing to find that Plaintiff's impairments met the requirements of Listing 12.04; 4) failing to properly consider Plaintiff's illiteracy; 5) failing

to consider the combined effect of Plaintiff's mental and physical impairments; 6) selectively considering certain evidence of record; and 7) failing to find Plaintiff's subjective complaints of pain to be credible.[1]   Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

### 1. Consideration of the Opinion Evidence

Plaintiff's first two assignments of error challenge the ALJ's weighing of the opinion evidence.  Specifically, Plaintiff asserts that the ALJ erred in discounting the opinion of her treating physician and instead relying on the findings of the state agency physician.  Each assertion will be addressed in turn.

### a. Dr. Everson

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinions of Curtis B. Everson, M.D., Plaintiff's treating physician for ten years.  Plaintiff asserts that in evaluating Dr. Everson's findings, the ALJ made only conclusory statements and failed to apply the requisite regulatory factors in evaluating Dr. Everson's opinions.  Plaintiff's assertions lack merit.

On September 25, 2009, Dr. Everson provided a Physical/Mental Functional Capacity Questionnaire addressing Plaintiff's functional limitations.[2]  (Tr. 444-52).  With respect to her physical limitations, Dr. Everson indicated that Plaintiff was unable to walk any distance without severe pain; she could sit for less than 2 hours in an 8-hour workday for 5 to 10 minutes at a time before needing to get up; she could stand for less than 2 hours

---

[1]   Many of Plaintiff's errors raise similar issues and will be considered together when applicable.

[2]   Plaintiff's mental impairments will be addressed in Section B(2).

in an 8-hour workday for 10 minutes at time before needing to sit down; and could lift and carry 10 pounds or less, but only on rare occasions. (Tr. 445-46). Dr. Everson further opined that during an 8-hour workday, Plaintiff needed to walk around every 10 minutes with the walk lasting 10 minutes. Dr. Everson also indicated that Plaintiff should elevate her legs above her heart for 50% of the workday and that she would miss four or more workdays each month. (Tr. 446, 447).

In evaluating the opinion evidence, the ALJ stated:

> I give little weight to the assessment from Dr. Everson at Exhibit 21F. The limitations described in that report are so extreme as to be unbelievable. For example, the source reported that claimant could not sit, stand and walk for four hours a day and could only rarely lift 10 pounds. There are no objective findings in this record to support such functional restrictions. While Dr. Everson treated claimant for an extended period and could be considered as a treating source under 20 CFR 404.1527 and 416.927, his opinion as to functional capacity is not consistent with the objective medical findings and is not consistent with the record as a whole. *See* Social Security Ruling 96-2p. I also give little weight to his mental assessment for the same reasons.

(Tr. 18).

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled

to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

Contrary to Plaintiff's assertion, the ALJ's decision indicates that he properly considered Dr. Everson's RFC assessments in accordance with agency regulations and controlling law. First, the ALJ reasonably concluded that Dr. Everson's extreme limitations were not supported by the evidence of record. Although Plaintiff complained of disabling back pain, Dr. Everson's treatment notes consistent primarily of Plaintiff's subjective complaints and do not contain any x-rays or other tests confirming the severity of the pain alleged. Notably, in April 2009, treatment notes from Dr. Simons, a pain management specialist indicate that "[a]lthough she was sent to us for chronic pain there are no x-rays or other tests sent by Dr. Everson regarding assessment of her pain." (Tr. 439).

As evidence in support of Dr. Everson's limitations, Plaintiff cites to her diagnoses of carpal tunnel syndrome, obesity and her complaints of low pack pain. However, it is well established that mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

Furthermore, Dr. Everson's findings were inconsistent with other substantial evidence of record. As noted by the ALJ, Dr. Sheridan, a state agency physician who examined Plaintiff in June 2007, reported mostly normal findings and opined that Plaintiff's back and knee impairments did not cause severe work-related limitations. (Tr. 15-16, Tr. 376-86). The ALJ also noted that other physicians had observed that Plaintiff had no pain in her joints or musculoskeletal system during examinations. (Tr. 16, 212, 224, 244, 254, 272). The ALJ further found that Plaintiff's conservative treatment history, and Plaintiff's daily activities were inconsistent with Dr. Everson's extreme limitations.

Thus, the ALJ's decision indicates that he first determined that Dr. Everson's findings were not consistent with other evidence, and he then applied the requisite regulatory factors in determining the weight to be assigned to Dr. Everson findings. *Blakley*, 581 F.3d at 408. As Dr. Everson's findings were not supported by objective evidence and were inconsistent with the record evidence as a whole, the ALJ properly discounted his findings. *See Cutlip,* 25 F.3d at 287. Accordinlgy, the ALJ's decision is substantially supported in this regard and should not be disturbed.

### b. Dr. Sheridan

Dr. Sheridan examined Plaintiff on June 21, 2007, at the request of the state agency. (Tr. 376-82). During the examination, Plaintiff reported that she had sleep apnea, bipolar disorder, shortness of breath, wheezing, and intermittent low back pain. (Tr. 376). Dr. Sheridan observed that Plaintiff had a normal gait, did not require ambulatory aids, had no abnormalities when standing or sitting, and was able to squat. (Tr. 377). Dr. Sheridan further noted that Plaintiff had normal reflexes and normal sensation in both her upper and lower extremities. (Tr. 377-78). Dr. Sheridan reported no spasms or tenderness in

Plaintiff's back and no motor deficits in her upper or lower extremities. (Tr. 378, 380). Dr. Sheridan diagnosed Plaintiff with sleep apnea, a history of asthma, bipolar disorder, and chronic low back strain. (Tr. 381). Based on the findings from his examination, Dr. Sheridan found Plaintiff's functional limitations to be compatible with light work.[3]

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3).

In this case, the ALJ assigned great weight to Dr. Sheridan's findings, as his

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§404.1567(b) (*re*:DIB), 416.967(b) (*re*: SSI). Social Security regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

findings were consistent with the weight of the medical evidence of record, including Plaintiff's reported daily activities. (Tr. 17). Plaintiff does not dispute Dr. Sheridan's findings, nor point to any evidence to the contrary. Instead, in an apparent attempt to show that Dr. Sheridan's assessment was somehow tainted, Plaintiff's submits a letter from the state agency explaining how an examining physician's assessment of a claimant should be formatted and what information it should contain. (*See* Doc. 9, Ex. A). Such evidence fails to establish that Dr. Sheridan's findings were not substantially supported or that the ALJ erred in relying on such findings. Accordingly, the undersigned finds that the ALJ reasonably relied on the Dr. Sheridan's assessment.

   *2. Evaluation of Plaintiff's Mental Impairments*

   With respect to her mental impairments, Plaintiff alleges that the ALJ erred in failing to find that she met the requirements of Listing 12.04. Listing 12.04 provides in pertinent part:

> *12.04 Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. *The required level of severity for these disorders is met when the requirements in both A and B are satisfied.*

> A.   Medically documented persistence, either continuous or intermittent, of one of the following:

>> 1.   Depressive syndrome characterized by at least 4 of the following:

>>> a.   Anhedonia or pervasive loss of interest in almost all activities; or
>>> b.   Appetite disturbance with change in weight; or
>>> c.   Sleep disturbance; or
>>> d.   Psychomotor agitation or retardation; or
>>> e.   Decreased energy; or
>>> f.   Feelings of guilt or worthlessness; or

g.    Difficulty concentrating or thinking; or
h.    Thoughts of suicide; or
I.    Hallucinations, delusions, or paranoid thinking; or

2.    Manic syndrome characterized by at least three of the following:

a.    Hyperactivity; or
b.    Pressure of speech; or
c.    Flight of ideas; or
d.    Inflated self-esteem; or
e.    Decreased need for sleep; or
f.    Easy distractibility; or
g.    Involvement in activities that have a high probability of painful consequences which are not recognized; or
h.    Hallucinations, delusions or paranoid thinking; or

3.    Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B.    Resulting in at least two of the following:

1.    Marked restriction of activities of daily living; or
2.    Marked difficulties in maintaining social functioning; or
3.    Marked difficulties in maintaining concentration, persistence, or pace; or
4.    Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A), (B) (*emphasis added*).

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment.  *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing.  (Tr. 12). Specifically addressing Listing 12.04, the ALJ found that Plaintiff's mental impairments did

not meet the "B" criteria as required to meet Listing 12.04.  (Tr. 12-13).  In making this determination, the ALJ relied on the findings of Jennifer Swain, Ph.D, a reviewing psychologist.  In June 2007, Dr. Swain reviewed Plaintiff's medical records and found that Plaintiff had "mild" restrictions in activities of daily living, "moderate" limitations in both her difficulties maintaining social functioning and her difficulties maintaining concentration, persistence, and pace, and no episodes of decompensation.  (Tr. 12-13, 372).

The ALJ found that Plaintiff's testimony supported Dr. Swain's finding of mild restrictions in activities of daily living, as Plaintiff was the primary caregiver for her children, she prepared meals, and was able to drive a car.  (Tr. 12, 31, 45, 47).  The ALJ further determined Dr. Swain's findings that Plaintiff had moderate limitations in social functioning and maintaining concentration, persistence, and pace were corroborated by Plaintiff's allegations of depression, mood swings, and temper problems, as well as her past terminations from being unable to get along with others. (Tr. 12-13).  Finally, the ALJ noted that the record did not suggest Plaintiff had undergone any periods of decompensation. (Tr. 13).

Plaintiff argues, however, that the ALJ should have relied on Dr. Everson's mental RFC assessment, wherein he concluded that Plaintiff's mental impairments met the requirements of Listing 12.04.  Plaintiff further argues that Dr. Swain's opinion, rendered more than 2 years prior to the ALJ's decision, failed to consider Plaintiff's more recent mental health records showing more severe restrictions.  Plaintiff's contention lacks merit.

Dr. Everson found that Plaintiff mental impairments resulted in "extreme" limitations in her ability to maintain social functioning and to maintain concentration, persistence, and pace.  (Tr. 452).  Additionally, Dr. Everson indicated that Plaintiff experienced three

episodes of decomposition in the last twelve months, with each episode lasting at least two weeks. (Tr. 452). Dr. Everson also concluded that Plaintiff's depression prevented her from performing even "low stress" jobs. (Tr. 445). The ALJ rejected Dr. Everson's mental limitations because they are not supported by objective evidence and are inconsistent with other record evidence.

Notably, Dr. Everson's own treatment notes fail to support his extreme limitations. Although Dr. Everson mentions Plaintiff's complaints of depression (*See* Tr. 267, 282, 283, 295), there is no indication from his treatment notes that Plaintiff's mental impairments interfered with her ability to function independently and appropriately or interfered with her ability to sustain focused attention and concentration. Furthermore, there is absolutely no evidence in the record to support Dr. Everson's findings that Plaintiff experienced three episodes of decompensation in the last twelve months. Episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). "Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g. hospitalizations, placement in a halfway house, or a highly structured and directing household). . . ." *Id.* There is nothing in the record to suggest that Plaintiff's mental impairments manifested such symptoms or signs.

Plaintiff contends that a May 2009 letter from Dr. Simons, a pain management specialist, to Dr. Everson, supports Dr. Everson's conclusion that her mental impairments

14

satisfy Listing 12.04. In the letter, Dr. Simons stated that Plaintiff "did score severely depressed on the screening we perform on all new patients and Cymbalta should be helpful for this as well." (Tr. 469). Contrary to Plaintiff's assertion, Dr. Simons' statements do not establish that she meets the Listing. As noted above, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young*, 925 F.2d at 151. Thus, the fact that Dr. Simons noted that Plaintiff was severely depressed, fails to establish any functional limitations relating to Plaintiff's depression or whether such depressive symptoms meet the "B" criteria as required to meet Listing 12.04. Accordingly, the undersigned finds that the ALJ properly discounted Dr. Everson's unsupported and conclusory statements. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (stating that ALJs are "not bound by conclusory statements of doctors").

Finally, the evidence of record establishes that the ALJ reasonably relied on Dr. Swain's opinion. As noted by the ALJ, Plaintiff's ability to care for three children, prepare meals, drive, and go out alone, support Dr. Swain's conclusion that Plaintiff has a mild restrictions of activities of daily living. In light of Plaintiff's depression and testimony that she has trouble getting along with others, the ALJ also reasonably determined that she was moderately limited in the areas of social functioning and maintaining concentration, persistence and pace. (Tr. 12). Lastly, as detailed above, the ALJ also properly determined that there is no indication that Plaintiff has experienced any episodes of decompensation. (Tr. 13). Although Plaintiff asserts Dr. Swain's 2007 assessment was not based on a complete case record, she fails to point to any later-acquired evidence to dispute her findings. The ultimate burden of proving disability under the statute rests with Plaintiff. 42 U.S.C. § 423(d)(5)(A). Plaintiff has failed to carry that burden in this case.

Accordingly, the undersigned finds that the ALJ properly determined that Plaintiff did not meet the requirements of Listing 12.04.

4.  *Plaintiff's Credibility*

Plaintiff's further argues that the ALJ did not adequately consider her pain and credibility.  Specifically, Plaintiff contends that the ALJ erred in failing to credit her subjective complaints of disabling pain.  Plaintiff's assertions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers* v. *Comm'r of Social Sec*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted).  In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain."  *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken."  *Id.* (citing 20 C.F.R. §404.1529(c)(3)).[4]

---

[4] The regulations provide that the ALJ's credibility decision must include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

The ALJ 's decision indicates that he carefully considered Plaintiff's testimony and complaints of disabling pain, and properly found that there was no objective evidence to support Plaintiff's allegations. (Tr. 16-17). *See also Walters*, 127 F.3d at 531. As detailed above, the objective evidence fails to support Plaintiff's complaints of disabling pain. *See Thoroughman v. Chater*, 91 F.3d 144, 1996 WL 316518, at *1 (6th Cir. 1996) (As the ALJ cited to the fact that there is no objective medical evidence to support Plaintiff's complaints of disabling pain, the ALJ's credibility determination was proper). In evaluating Plaintiff's credibility, the ALJ noted that the record contains mostly normal or mild clinical findings. (Tr. 15-16). In that regard, the ALJ found that there is no evidence that Plaintiff suffers from persistent neurological deficits, or signs of nerve root compromise. (Tr. 15). The ALJ further noted that imaging studies have failed to reveal significant pathology in the lumbar spine and examinations have been mostly negative for clinical signs of radicular pain. *Id.* In addition, the ALJ also found that despite Plaintiff's complaints of severe back and knee pain, examinations showed that Plaintiff had a normal gait, she did not use ambulatory aids, and she was able to performed a full squat unassisted. (Tr. 15, 377-382).

Plaintiff argues that her subjective complaints of pain are supported by medical evidence. Specifically, Plaintiff cites to her consistent reports of pain to her doctors, and her treatments with epidural injections. (Tr. 242, 271, 277-278, 299, 381, 429-441, 469). However, such evidence is not indicative of disabling pain. To the contrary, Plaintiff reported that she received very good pain relief from epidural injections. (Tr. 429, 431, 435). Moreover, as outlined above, Plaintiff's subjective complaints were not supported by objective evidence or clinical findings.

Furthermore, the ALJ properly considered the regulatory factors in evaluating her

credibility and complaints of disabling pain.  For example, the ALJ noted that Plaintiff had received minimal treatment during the relevant period and had not been hospitalized for any medical condition since 2006.  (Tr. 16).  The ALJ also reasonably concluded that the Plaintiff's ability to perform activities of daily living "belie [her] allegations of disability."  (Tr. 16).  Notably, Plaintiff was the primary caregiver for three children, she performed household chores and was able drive.  The ALJ properly considered that Plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding.  *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible.  The ALJ's credibility finding is entitled to deference and thus should be affirmed.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

5. *Plaintiff's Remaining Errors*

Plaintiff further asserts that the ALJ erred in considering Plaintiff's illiteracy and failed to consider the combined effect of Plaintiff's physical and mental impairments.  Plaintiff also

argues that the ALJ erred by selectively considering certain evidence of record. Plaintiff's assertions lack evidentiary support and are therefore not well taken.

First, in 2001, Plaintiff was examined by a psychologist who indicated that she had a third grade reading level. (Tr. 197 ). In light of this notation, Plaintiff asserts that the ALJ erred in finding that she was illiterate. Agency regulations define illiteracy as the inability to "read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). Here, the ALJ determined that Plaintiff's limited reading ability is not representative of illiteracy as that term is defined by the regulations. (Tr. 18). The undersigned agrees.

As noted by the Commissioner, the record contains no evidence that Plaintiff was illiterate or had significant reading limitations. Plaintiff reported that she is able to read and understand English and had no difficulty reading. (Tr. 134, 143). She further reported that she is able to pay her bills and use the family computer. Moreover, the record is devoid of any statements by Plaintiff to any doctor or psychologist that she was illiterate or had trouble reading. Accordingly, the ALJ did not err in failing to find that Plaintiff was illiterate, nor did he err in failing to include any reading-related limitations in his RFC finding.

Second, contrary to Plaintiff's conclusory assertion, the ALJ fully considered the combined effect of her impairments[5], as evidenced by the analysis of Plaintiff's impairments

---

[5] The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Reynolds v. Astrue*, Case No. 3:09-cv-95, 2010 WL 1253810, at * 9 ( S.D. Ohio January 27, 2010); citing *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988).

in his decision, as well as the detailed questioning of the vocational expert relating to such impairments. *Bishop v. Shalala*, 64 F.3d 662 (Table), 1995 WL 490126, at *3 (6th Cir. 1995) (Questions posed to the vocational expert establish that the ALJ considered Bishop's impairments in combination). Moreover, Plaintiff fails to explain in what regard the ALJ did not consider the combined effects of her impairments, nor did she show how her combined impairments affected her RFC.

Finally, Plaintiff's assertion that the ALJ failed to consider certain pieces of evidence that were favorable to a finding of disability is not well-taken. Namely, Plaintiff asserts that the ALJ ignored certain testimony from the vocational expert. At the administrative hearing, Plaintiff's counsel posed a hypothetical question to the VE based on the limitations set forth by Dr. Everson. Given such limitations, the VE testified there would be no jobs available that Plaintiff could perform. Contrary to Plaintiff's assertion, the ALJ did not err in failing to credit such testimony from the VE.

The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's *credible* limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). As outlined above, the ALJ reasonably determined that Dr. Everson's findings were not supported by objective evidence or clinical findings and therefore not entitled to deference. Thus, the ALJ's failure to rely on VE testimony based on Dr. Everson's findings was not erroneous. Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence. The VE's testimony in response - setting forth the many numbers of jobs that plaintiff can still perform - thus constitutes substantial evidence that

Plaintiff is not disabled. *See Hammond v. Apfel,* No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BILLIE JO CLAYBURN-DAY,                         Case No. 1:10-cv-859

      Plaintiff,                                          Spiegel, J.
                                    Bowman, M.J.

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).